### FULTON v. INSURANCE CO. OF NORTH AMERICA.

(Circuit Court of Appeals, Second Circuit. February 28, 1905.)

MARINE INSURANCE—PLACE OF LOSS.

Where a houseboat insured was lost while within the "natural" boundary of the inland waters of New York Harbor, as well as within the statutory lines dividing such inland waters from the high seas, fixed by the Secretary of the Treasury, the craft was covered by a policy containing a warranty that the boat should be confined to the inland waters of New York, New Jersey, and Long Island, and that no liability should exist for a loss during a deviation of the limits so named, though such deviation should not avoid the policy, which should reattach on the return of the vessel within such limits.

Appeal from the District Court of the United States for the Southern District of New York.

For opinion below, see 127 Fed. 413.

E. C. Dusenbury, for appellant.

Lawrence Kneeland, for appellee.

Before WALLACE, LACOMBE, and COXE, Circuit Judges.

PER CURIAM. The action was brought to recover under a one-year marine policy of insurance covering the houseboat Mon Mon, which sank while under tow from Gravesend to Sheepshead Bay, and when about opposite the Oriental Hotel, and within about a quarter of a mile of Coney Island. There is no question of seaworthiness or navigation; the only controversy is as to the application of these clauses of the policy:

"Warranted confined to the inland waters of New Jersey, New York and Long Island."

"Any deviation beyond the limits named in this policy shall not avoid this policy; but no liability shall exist during such deviation; and upon the return of said vessel within the limits named herein, no disaster having occurred, this policy shall be and remain in full force and effect, unless a disaster occurs while deviating."

"Against perils of the Harbors, Bays, Sounds, Seas, Rivers and other waters as above named."

By the act of February 19, 1895, c. 102, § 2, 28 Stat. 672 [U. S. Comp. St. 1901, p. 2900], the Secretary of the Treasury was authorized, empowered, and directed from time to time to designate and define, by suitable bearings or ranges, with lighthouses, light vessels, buoys, or coast objects, the lines dividing the high seas from rivers, harbors, and inland waters, the act being supplementary to the act to adopt regulations for preventing collisions at sea. Pursuant to such act, the line for New York Harbor has been established as follows:

"From Navesink (southerly) Light-house N. E. 5/8 E. easterly to Scotland light-vessel; thence N. N. E. 1/2 E. through Gedney Channel Whistling Buoy to Rockaway Beach Life Saving Station."

This line lies considerably outside of the place where the vessel was lost.

The appellee insists that the line laid down under this statute has no application in this case, because it was fixed solely for the purpose of arbitrarily determining where one set of regulations as to navigation ends and another begins. It is unnecessary now to discuss or decide that point, because we are of the opinion that, if the "natural" boundary of inland waters is to be taken instead of the "statutory" boundary, it will be found in the line which connects the extremity of Sandy Hook with the nearest point on Rockaway Beach, these headlands being the natural fauces terræ. The Mon Mon was lost well inside of that line, and was covered by the policy.

The decree is reversed, with costs, and cause remanded with instructions to decree in favor of the libelant, with interest and costs.